**IT IS ORDERED as set forth below:**


**Date: June 12, 2026**

_Sage M. Sigler_
_____

**Sage M. Sigler**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **In re:** | **CHAPTER 11** |
| **NRPF GROUP TWO, LLC, et al.,**[1] | **Jointly Administered Under** |
| | **Case No. 26-53945-SMS** |
| **Debtors.** | |

**MEMORANDUM OPINION**[2]

Debtors operated dozens of franchise restaurants in several states under leases with dozens

of landlords. Now, Debtors intend to sell their assets to a buyer that will continue operating the

restaurants. Debtors identified a stalking horse bidder for the sale, and as part of its purchase, the

bidder sought to acquire most of Debtors' unexpired leases, which Debtors will assume and assign

to the bidder. Debtors have already rejected most of the unexpired leases not included in the sale.

One remaining unexpired lease operates as a master lease governing seven properties in Georgia

---

[1] Debtors in these cases along with the last four digits of their federal tax identification number are: NRPF Group Two, LLC (0079); Neighborhood Restaurant Partners Florida, LLC (9185); and Neighborhood Restaurant Partners Florida Two, LLC (6462).

[2] This Memorandum Opinion supplements the Court's oral ruling read into the record on May 29, 2026, and the short-form order granting Debtors' motion to reject its lease entered on June 3, 2026 (Doc. 264).

and Florida. Debtors want to include only four of the properties in the sale and reject the master lease with respect to the other three. The landlord objects to severing the master lease, asserting that Debtors must assume or reject the master lease as a whole. The sole question before the Court is whether the master lease is severable under § 365 of the Bankruptcy Code.

The parties thoroughly briefed the issue and agree on many points of law. They agree that a debtor cannot assume the benefits and reject the detriments of the same contract; that state law determines whether a contract is severable; and that Georgia law applies to the Georgia properties included in the master lease and Florida law applies to the Florida properties.[3] The parties also agree that the master lease, in its original form, was not severable. But the parties disagree about the effect of two amendments to the master lease.

SCF RC Funding I, LLC ("SCF"), Debtors' landlord, contends that the amendments did not alter the clear intent of the parties that their master lease (the "Master Lease," Doc. 179, Exhibits A-C) not be severable, while Debtors argue that the amendments transformed the Master Lease into a severable agreement. The parties cited several cases with similar fact patterns applying the laws of various states, all of which aided the Court's analysis.

The Court held hearings on Debtors' motion to reject the Master Lease with respect to three properties (the "Motion," Doc. 10) on May 26 and 29, 2026. The parties presented their oral arguments to the Court at the May 26 hearing, and the Court read its oral ruling granting Debtors' Motion into the record at the May 29 hearing. For the reasons stated on the record at the May 29 hearing, as supplemented in this Memorandum Opinion, the Court finds that the Master Lease is severable. The Court overrules SCF's objection and allows Debtors to reject the Master Lease in

---

[3] The court questions how two different state laws can govern one purportedly unseverable contract, but the result here is the same whether Georgia or Florida law applies.

part and assume the remaining leases subject to cure and adequate assurance of future performance as required by 11 U.S.C. § 365.

### A.  The original Master Lease

SCF's and Debtors' predecessors in interest entered into the Master Lease in December 2010. Although the Master Lease covered eight properties, the parties made it clear in the provisions of the original Master Lease that they intended it to be a single, unseverable contract between the parties. The clearest indication comes in ¶ 2.2, which provides:

> Lessor and Lessee intend that this Lease constitutes a single master lease of all, but not less than all, of the Premises and that Lessor and Lessee have executed and delivered this Lease with the understanding that this Lease constitutes a unitary, unseverable instrument pertaining to all, but not less than all, of the Premises, and that neither this Lease nor the duties, obligations or rights of Lessee may be allocated or otherwise divided by Lessee or Lessor among the real property comprising the Premises.

Further indications of the parties' intent can be found in other parts of the Master Lease. For example, the rent under the original Master Lease is a single amount and not apportioned to each property. Paragraph 7.1, which contemplates the removal of an individual property from the Master Lease, only allows for severance when a property is condemned and not usable by Debtors. And if that occurs, the rent due under the Master Lease will decrease by the same percentage by which the property's value is reduced. Paragraph 11.1 of the original Master Lease allows SCF to assign the Master Lease only "in whole, but not in part" and allows SCF to sell a property in the event of a government taking. In effect, the original Master Lease provides for severance only when forced on the parties by a government action and reduces the total rent due by the total effect on the properties as a whole.

### B.  The amendments to the Master Lease

In its original form, the Master Lease appears quite similar to the contract the court determined unseverable in *In re Dickinson Theatres, Inc.*, No. 12-22602, 2012 WL 4867220 (Bankr. D. Kan. Oct. 12, 2012), a case upon which SCF relies. To the *Dickinson Theatres* court, nothing altered the explicit, uncontroverted agreement of the parties that their lease was unseverable. And the parties here agree that the Master Lease would be treated the same as the lease in *Dickinson Theatres* had there been no modifications to it. But the original Master Lease was not the agreement of the parties when Debtors filed these bankruptcy cases. The parties amended the Master Lease three times and integrated those amendments into the Master Lease. The first amendment replaces the Master Lease's original ¶ 11.1 with a new ¶ 11.1 that restates SCF's restriction from assigning the Master Lease in part, but then states:

> Notwithstanding the foregoing, Lessor shall have the right to sell or convey an Individual Premises or any portion thereof, in the event of a Taking or Partial Taking, or in accordance with subsection (b) . . . .

Subsection (b) allows SCF, "[n]otwithstanding any provision in this Lease to the contrary," to sever and split the lease into one or more individual leases. The Court reads this paragraph to mean that, notwithstanding the apparent intent of the parties expressed in ¶ 2.2, SCF can sever the Master Lease when it wants to sell one of the subject properties.

The first amendment also includes a schedule apportioning the total rent due under the Master Lease to each location rather than maintaining the single lump sum rent payment required by the original Master Lease. The third amendment removed one of the individual properties from the Master Lease, reducing the number of properties governed by the Master Lease from eight to seven, and reapportioned rent among the remaining properties.

### C.  SCF's cited authority is distinguishable.

SCF asserts that the facts here are similar to those in *In re Buffets Holdings, Inc.*, 387 B.R. 115 (Bankr. D. Del. 2008), where the court determined that the master leases at issue there, which "could in certain circumstances be severed by their terms," were not intended by the parties to be severable. *Id.* at 123. Although the *Buffets Holdings* court examined many relevant facts and provisions of the master leases at issue, it kept coming back to one major point: the master leases there were the result of a sale-leaseback transaction. To the *Buffets Holdings* court, that single fact weighed so heavily against the prospect that the master leases were severable that none of the provisions of the master leases indicating otherwise could overcome it. The same type of sale-leaseback transaction was the foundation of the unseverable lease in *Dickinson Theaters*. Those cases are distinguishable because the Master Lease here did not arise out of a sale-leaseback transaction.

SCF also argues that the first amendment only allows SCF, not Debtors, to sell a property within the Master Lease, which SCF asserts does not evince that the parties intended severance. If the Court's task here were to determine whether Debtors had the right to sever the Master Lease, the Court may agree. But the Court must determine whether the Master Lease itself is severable regardless of who is trying to sever it. And the first amendment to the Master Lease clearly states that SCF can sever the Master Lease. Thus, the parties explicitly agreed that the Master Lease, notwithstanding any other provision (including ¶ 2.2) is severable. That the parties agreed only SCF could exercise the right to sever the Master Lease only affects *how*—but not *whether*—the lease may be severed under applicable non-bankruptcy law.

SCF's other cited authority does not persuade the Court otherwise. SCF cites *In re Driscoll*, 401 B.R. 512 (Bankr. S.D. Fla. 2009), where a trustee argued that an addendum to the lease

requiring the landlord to pay the tenant for any unamortized improvements if the property were sold during the term of the lease was a separate agreement, and the court disagreed. The court reasoned that the purpose of the addendum was to enable the original lease by allowing the tenant to invest in improvements to the property without the risk that the landlord would sell it and get a windfall from the tenant's improvements. The apparent purpose of the amendments here is to allow SCF to sever the Master Lease and apportion rent by property rather than as one whole. The purportedly separate agreements in *Driscoll* related to a single property, not multiple properties as in the Master Lease here. The *Driscoll* court's analysis therefore does not alter the Court's determination here.

SCF also cites *In re Cont. Rsch. Sols., Inc.*, 2013 WL 1910286 (Bankr. D. Del. 2013), where the tenant argued severability because a third amendment to a master lease added an additional property to the original. The court determined that the master lease was not severable because, even though the amendment added a property to the lease, the amendment included provisions that extended the term for *all* leased properties, abated rent for *all* leased space if a particular space was not available on time, had identical rent rates for *all* spaces, and increased the debtors' portion of all common area maintenance charges to a new, higher, aggregate amount. In other words, although a property was added to the master lease by an amendment, the parties went out of their way to treat the new property as fully integrated and part of the master lease. The Court does not see similar efforts to maintain unseverability in the amendments to the Master Lease here and, to the contrary, the amendments to this Master Lease in fact sever one property and add provisions allowing the further severance of others.

SCF cites *In re Aneco Elec. Const., Inc.*, 326 B.R. 197 (Bankr. M.D. Fla. 2005), where the debtor was contracted to perform the same type of electrical work in the same location under

ostensibly separate agreements. The court applied the factors articulated in *In re Gardinier, Inc.*, 831 F.2d 974 (11th Cir.1987), which applied Florida law, to determine whether the contract was severable. Those factors were: (i) whether the nature and purpose of the agreements are different, (ii) whether the consideration for each agreement is distinct, and (iii) whether the parties' obligations under the contracts are interrelated. *See Aneco*, 326 B.R. at 201.

The standard is similar in Georgia. *See, e.g., Imerman v. London*, 255 Ga. App. 140, 141-42, 564 S.E. 2d 544, 545 (Ga. App. 2002) (A contract "is severable, when, in its nature and purpose, it is susceptible of divisions and appointment, and has two or more parts in respect to matters or things contemplated and embraced by the contract which are not necessarily dependent upon each other."). Because the purpose of the agreements in *Aneco* was the same (i.e., electrical work at a single location), the consideration was not apportioned between them, and the same parties were working on the same construction project under both agreements, the *Aneco* court determined that the agreements were unseverable.

### D. The Gardinier *factors*

Even if the Court were not convinced by the first amendment to the Master Lease that the parties intended it to be severable, applying the *Gardinier* factors would lead to the same result. The purpose of the Master Lease with respect to each property is the same to the extent that the purpose is for SCF to lease real property to Debtors to operate restaurants. But the nature of the agreements differ in that the lease of each property is governed by the law of the state in which it is located, leading to potentially different laws applying to each property. The Court therefore sees the first factor as a wash, with neither party clearly favored.

But the second and third factors weigh heavily in Debtors' favor. The first and third amendments to the Master Lease made consideration for each property location distinct. Prior to

the first amendment, Debtors paid a single sum to SCF. There was no breakdown of rent by location, which would put the second factor solely in SCF's favor. But the first amendment altered that structure. Although Debtors' practice of paying a single sum to SCF each month continued after the Master Lease was amended, the parties agreed to distinct rent for each location. And any argument that the parties' obligations with respect to all properties were interrelated cannot overcome the fact that SCF, at its discretion, could remove and sever a property from the Master Lease without affecting Debtors' obligations to continue paying rent on the other properties at their aggregate rental rates.

### E. Similar facts have led other courts to the same conclusion.

The facts of *In re Convenience USA, Inc.*, 2002 Bankr. LEXIS 348 (Bankr. M.D. N.C. Feb. 12, 2002) are far more analogous to the facts here. Although the *Convenience USA* court applied Texas law rather than Georgia or Florida law, the first factor under Texas law to determine whether a contract is severable is the intent of the parties, just as under Georgia and Florida law. The *Convenience USA* court focused its analysis on the contract provisions regarding transfers during the lease. The court relied heavily on the fact that the landlord had a right to sell or transfer any of the properties at any time, and just like Debtors here, the tenant had to enter into a lease with the new landlord while the master lease with the original landlord continued as to the other properties, except, just like here, the rent is reduced by the amount allocated to the property. "In fact," the *Convenience USA* court reasoned, "the lease has to be divisible in order for the landlord to be able to sell leased properties and still have the lease continue into effect as to the remaining properties." *Convenience USA*, 2002 Bankr. LEXIS 348, at *12. The *Convenience USA* lease also included a schedule of rent as apportioned to each property. The only material fact present there but absent here is that the debtor there had different (related) entities as landlords rather than one. But that

distinction is not enough to require a different result.

Likewise, in *In re FFP Operating Partners, LP*, 2004 Bankr. LEXIS 1192 (Bankr. N.D. Tx. August 12, 2004), the court relied on the fact that the lease allowed the landlord to sell any individual property while the lease continued as to the other properties. The *FFP* court reasoned that fact, "standing alone," suggested severability. *Id*. at *10. It also looked to the destruction and condemnation/takings provision, which allowed the destroyed or condemned property to be removed from the lease, at the lessor's option, as further evidence of an intention of severability. Although the landlord there, like SCF here, had the option to terminate the entire lease upon the tenant's default rather than just removing the property from the lease, the *FFP* court was not persuaded that the lease was unseverable.

### F.  Conclusion

Many of the facts upon which the *Convenience USA* and *FFP* courts made their decisions are present here and support the Court's ruling that the Master Lease is severable. And the determinative facts in cases SCF cites going the other way—that the leases were part of a sale-leaseback transaction or related to a single property—are not. At the end of the day, SCF cannot have its cake and eat it, asserting that it can sever the Master Lease, but the Master Lease is unseverable in the context of § 365 of the Bankruptcy Code. If SCF can sever the Master Lease, as explicitly stated in the first amendment, then the Master Lease is severable, and Debtors can utilize § 365 to reject the lease as to some locations in the Master Lease and assume others. For these reasons, the Court grants Debtors' Motion, subject to appropriate cure and adequate assurance with respect to the assumed properties.

**[END OF DOCUMENT]**

**Distribution List:**

NRPF Group Two, LLC
One Buckhead Plaza
3060 Peachtree Road, NW
Suite 425
Atlanta, GA 30305

Neighborhood Restaurant Partners Florida,
LLC
One Buckhead Plaza
3060 Peachtree Road, NW
Suite 425
Atlanta, GA 30305

Neighborhood Restaurants Partners Florida
Two, LLC
One Buckhead Plaza
3060 Peachtree Road, NW
Suite 425
Atlanta, GA 30305

J. Robert Williamson
Scroggins, Williamson & Ray, P.C.
Suite 230
4401 Northside Parkway
Atlanta, GA 30327

Ashley Reynolds Ray
Scroggins, Williamson & Ray, P.C.
Suite 230
4401 Northside Parkway
Atlanta, GA 30327

Craig Solomon Ganz
Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004

Joel F. Newell
Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004

Mark Duedall
Baker, Donelson, Bearman, Caldwell &
Berkowitz, PC
Suite 1500
3414 Peachtree Road, N.E.
Atlanta, GA 30326

Siena Berrios Gaddy
Baker Donelson Bearman Caldwell &
Berkowitz, PC
3414 Peachtree Road NE
Suite 1500
Atlanta, GA 30326

Alan Hinderleider
Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303